IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ROGER IVEY, | ) |
|         PLAINTIFF, | ) CIVIL ACTION NO. _____ |
| vs. | ) |
| | ) HON. |
| THE DOW CHEMICAL COMPANY, | ) |
|         DEFENDANT. | ) |
| _____ | ) |

## COMPLAINT

PLAINTIFF, ROGER IVEY, by and through his attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint and Demand for Trial by Jury against THE DOW CHEMICAL COMPANY.

## JURY DEMAND

COMES NOW PLAINTFF, and hereby makes his demand for trial by jury.

## JURISDICTION

1. At all times relevant to this complaint, PLAINTIFF ROGER IVEY was a resident of Saginaw, County in the State of Michigan.

2. DEFENDANT THE DOW CHEMICAL COMPANY is a domestic profit corporation, which has a place of business in Midland, Michigan.

3. This action is brought in this Court on the basis of federal question jurisdiction, pursuant to 42 U.S.C. § 1981.

4. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

1

## VENUE

5. Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

6. Plaintiff Roger Ivey, an African-American male, began his employment with Dow on April 30, 2022, in a production role classified as LT1. Plaintiff was one of only one or two Black employees in the building where he worked.

7. From his first day, Plaintiff observed discriminatory treatment due to his race. Unlike his white colleagues, Plaintiff was not provided adequate training for his position, forcing him to rely on his previous experience to perform his duties without support or guidance.

8. Plaintiff requested training – which would be needed for him to get promoted – but was ignored.

9. Shortly after beginning his employment, Plaintiff noticed disturbing racial imagery, specifically pictures of monkeys placed on multiple lockers in his workplace, which he reasonably interpreted as racial harassment directed toward Black employees, including himself.

10. Plaintiff was one of the only Black employees in his department.

11. Plaintiff informed Defendant's agents about this who explained that it was not meant to be discriminatory, though at some point, the pictures were removed.

12. Plaintiff's efforts to perform his job were actively sabotaged. For example, Plaintiff's materials were frequently moved from their designated locations, requiring him to retrace and correct errors deliberately caused by others to interfere with his performance.

13. Plaintiff repeatedly faced obstruction from a white co-worker (identified as LT3), who moved materials to incorrect locations, creating confusion and additional work for Plaintiff, despite his placement of materials in the correct areas.

14. Plaintiff's supervisor refused to provide him with standard breaks, forcing him to work without relief while his white colleagues were regularly allowed breaks.

15. Plaintiff was frequently blamed for errors and incidents that occurred on other shifts or were caused by others, including an incident where he was wrongfully accused of sending out incorrect materials, which occurred on a different shift.

16. Plaintiff's machine experienced repeated issues, requiring him to move heavy barrels to reset the machine manually. On one occasion, a co-worker discovered the sensor had been tampered with, indicating intentional sabotage.

17. Plaintiff further observed another worker, who had assisted in training him, watching as Plaintiff's machine nearly went into emergency shutdown due to a chemical line backup. The co-worker refused to alert Plaintiff to the issue. When Plaintiff noticed the problem himself, he had to rush to resolve it, narrowly avoiding significant disruption. Plaintiff could have faced disciplinary action if the issue had not been addressed in time.

18. Due to this ongoing harassment and hostile work environment, Plaintiff sought counseling but was only permitted a single session before being forced to return to work, despite expressing significant mental distress and fears for his safety.

19. Plaintiff lodged multiple complaints with supervisors and human resources regarding the harassment and discriminatory treatment he faced, yet little action was taken aside from minor corrective actions such as the removal of the monkey imagery.

20. Plaintiff was forced to resign in approximately August of 2022 after suffering severe

mental distress as a result of the hostile work environment and lack of support from Defendant.

21. Plaintiff requests damages as set forth herein.

## COUNT I

## RACIAL DISCRIMINATION IN VIOLATION OF 42 USC § 1981

22. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

23. 42 U.S.C. § 1981 prohibits employers from intentionally discriminating against individuals, including employees, in the making and enforcement of contracts.

24. Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded him by the U.S. Constitution and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

25. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

26. The intentional discrimination on the basis of Plaintiff's race by Defendant that Plaintiff experienced included severe and persistent harassment and Defendant's refusal to promote him or treat him like other non-Black employees, which broke the contract between the parties.

27. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

28. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

29. As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about her future, physical and emotional distress, and loss.

## COUNT II
## RETALIATION IN VIOLATION OF THE ELCRA

30. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

31. At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

32. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

33. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

34. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including speaking up about racial discrimination and harassment.

35. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to agents of Defendant.

36. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, including failing to promote him and causing an increased hostile work environment.

37. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

38. Plaintiff notified Defendant and its agents of the unwelcome conduct and communication; however, Defendant failed to remedy the same.

39. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

40. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

41. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV

### DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

42. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

43. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

44. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or skin color.

45. Plaintiff is a Black man, and, as a result, is a member of a protected class pursuant to ELCRA.

46. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class, as stated herein.

6

47. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

48. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

49. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs have sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

50. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
## HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF THE ELCRA

51. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

52. At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

53. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

54. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

55. Plaintiff's work environment, as alleged in the statement of facts made it so any individual who reported or spoke out against Defendant's discriminatory practices had an unworkable work environment.

56. Moreover, Plaintiff's attempts to have the situation remedied, coupled with Defendant ignoring Plaintiff's complaints made the situation untenable.

57. Additionally, Defendant treated Black employees such as Plaintiff in a hostile, intimidating, and offensive way.

58. The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

59. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

60. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

61. Plaintiff requests relief as described in the Prayer for Relief below

## RELIEF REQUESTED

PLAINTIFF, ROGER IVEY, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;
2. Exemplary damages in whatever amount which Plaintiff is entitled;
3. An award of lost wages and the value of fringe benefits, past and future;
4. An award of interest, costs, and reasonable attorney fees; and
5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: November 8, 2024 Respectfully Submitted,

CARLA D. AIKENS, P.L.C.

/s/ *Carla D. Aikens*
Carla D. Aikens (P69530)
Rejanaé M. Thurman (P85701)
615 Griswold St., Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
rejanae@aikenslawfirm.com
*Attorneys for Plaintiff*

9